

# THE ATTORNEY GENERAL

# OF TEXAS

**AUSTIN, TEXAS 78711**

CRAWFORD C. MARTIN
ATTORNEY GENERAL

April 20, 1970

Honorable Bruce Gibson                    Opinion No. M-610
Credit Union Commissioner
900 Congress Avenue
Austin, Texas 78701                       Re:    Whether the Credit Union
                                                 Commissioner has the author-
                                                 ity to enter into a proposed
                                                 cooperative program with the
                                                 Federal Trade Commissioner
                                                 to facilitate the enforcement
Dear Mr. Gibson:                                 of the Truth in Lending Act.

        Reference is made to your letter in which you request an opinion
from this office as to the captioned matter.   Your letter reads as follows:

        "This Department has before it for considera-
        tion a request from the Federal Trade Commission,
        Washington, D. C. , asking that their proposed exam-
        ination questionnaire regarding the Federal Truth-In-
        Lending Act relative to State Chartered Credit Unions
        be made a part of our regular examination reports re-
        quired by Article 2461, Section 32(a), V. C. S.

        "Copies of the questionnaire and Truth-In-
        Lending Liaison Agreement are attached for your in-
        spection.

        "In view of this state supervisory agency in-
        volving itself with a Federal law through its examina-
        tions, I would appreciate your opinion as to whether we
        might be jeopardizing our position legally as a state
        agency. "

        The Truth in Lending Liaison Agreement to which you allude reads,
in part, as follows:

". . .

"Under said Act, the (Federal Trade) Commission is charged with enforcement responsibility in regard to all non-Federally regulated licensed and/or examined consumer creditors in the State. Since (Texas) Department examiners regularly inspect and have other contact with said grantors of credit, the Department hereby agrees to enter into a voluntary cooperative Truth in Lending enforcement program relative to these creditors.

"The Commission hereby agrees to:

"1. Assist in the education and training of Department inspection and examination personnel, as may be requested by the Department;

"2. Supply the Department with appropriate forms, tables, and guidelines, as requested by the Department; and

"3. Report to the Department any alleged violations of the Act by companies doing business in that State but not doing business in interstate commerce.

"The Department hereby agrees to:

"1. Investigate any reports of violations of the Act it receives either directly from Consumers or from the Commission; and

"2. Report after examination or investigation any violations of the Act, along with supporting documentation, to the Commission.

". . . It may be cancelled upon written notice by either party to the other. "

Adverting to the questionnaire, as proposed by the Federal Trade Commission, we note that it is comprised of thirty-six questions or items, several with multiple parts, a number of which involve matters that are neither expressly or impliedly within the duties and responsibilities conferred by statute upon the Credit Union Department.

Article 2461-32, Vernon's Civil Statutes, The Credit Union Act, entitled "Examinations" reads, in part, as follows:

> "(a) The Credit Union Department annually shall examine, or cause to be examined, each credit union. Each credit union and all of its officers and agents shall be required to give to representatives of said department full access to all books, papers, securities, records, and other sources of information under their control . . .
>
> "(b) A report of such examination shall be forwarded to the chairman of the board of each credit union . . .
>
> "(c) For the purpose of such examinations each credit union shall pay an examination fee based upon the cost of performing the examination and to bear a proportionate share of the expenses of the Credit Union Department . . . but not to exceed $75 per day per person engaged in such examination."

The Credit Union Act, Article 2461-47, Vernon's Civil Statutes, sets out the powers and duties of the Credit Union Commissioner. This article provides, in part, as follows:

> "(a) By and with the advice and consent of the Senate, the Credit Union Commission shall elect a Commissioner of Credit Unions who shall be an employee of said commission and subject to its orders and directions . . .
>
> "(b) . . .
>
> "(c) . . .

"(d) Upon the appointment and qualification of a
Credit Union Commissioner under this Act, such Credit
Union Commissioner shall . . . supervise and regulate
in accordance with the rules and regulations promulgated
by the Credit Union Commissioner together with the Credit
Union Commission, all credit unions doing business in
this state (except federal credit unions organized and ex-
isting under federal law) and he shall have and perform all
of the duties and shall exercise all of the powers thereto-
fore imposed upon the Banking Commissioner . . ."

The question presented to us is whether the Credit Union Commis-
sioner has the authority to enter into a proposed cooperative Truth in Lend-
ing Liaison Agreement with the Federal Trade Commission, the purpose of
which is to facilitate the enforcement of the Truth in Lending Act.

We answer the question in the negative.

A pertinent statement of the general rule is found in 81 C.J.S. 895,
States, Sec. 7, which we quote:

"As a general rule . . . There is no constitu-
tional inhibition preventing co-operation between the
state and federal governments, where each acts with-
in its appropriate sphere, and may at any time re-
assert its full control over the subject matter of the
agreement, and where the arrangement between the
federal and state authority does not vest in federal
authority powers amounting to substantial control over
matters of local concern, co-operation between state
and nation is lawful . . ."

However, this general rule is not applicable as will be hereinafter seen.

The terms of the proposed Truth in Lending Liaison Agreement re-
flects that the Credit Union Department would report to the Federal Trade
Commission any violations of the Truth in Lending Act noted during a regu-
lar examination or a special investigation. The Credit Union Department
would further agree to investigate any alleged violations of the Truth in

Lending Act when requested by the Federal Trade Commission and report the results of such investigation to the Commission. It appears that the effect of such agreement would cause the Credit Union Department to become an investigative branch or agency of the Federal Trade Commission, subject to the Commission's orders and directives in numerous matters, some of which are beyond the statutory jurisdiction of the Credit Union Department.

It is stated in 34 Tex. Jur. 440, 441, Public Officers, Sec. 67:

> "Public officers and governmental and adminis-
> trative boards possess only such powers as are express-
> ly conferred upon them by law or are necessarily im-
> plied from the powers so conferred. They cannot legally
> perform acts not authorized by existing law . . ."

The case of Bryan v. Sundberg, 5 Tex. 418 (1849) announces the applicable law in the situation here presented:

> "Statutes which prescribe and limit the exer-
> cise of official duty ought to receive a strict interpre-
> tation in respect to the powers conferred and the man-
> ner of their exercise, and those powers are not to be
> enlarged by construction. The officers must look to the
> act by which his office is created and its duties are de-
> fined to ascertain the extent of his powers and the line
> of his duties; and he is not at liberty to transcend the
> former or vary the prescribed mode of performance of
> the latter." (Emphasis added.)

In 43 Am. Jur. 68, Public Officers, Sec. 249, the following state-ment of the law is made:

> "In general, the powers and duties of officers
> are prescribed by the Constitution or by statute, or
> both, and they are measured by the terms and neces-
> sary implication of the grant, and must be executed
> in the manner directed and by the officer specified."

The Truth in Lending Act is codified as 15 U.S.C.A. 1601, et seq. We note that the proposed Agreement obligates the Credit Union Commissioner to:

"1. Investigate any reports of violations of the Act it receives either directly from Consumers or from the Commission; and

"2. Report after examination or investigation any violations of the Act, along with supporting documentation, to the Commission."

Under these provisions the Credit Union Commissioner's obligations are expanded to include transactions and complaints by Consumers under the Federal Act, as well as directives from the Federal Trade Commission, none of which may have any connection whatever with the duties imposed upon the Credit Union Commissioner by the Texas statutes.

The Credit Union Act is without any provisions authorizing the Credit Union Commissioner to enter into a cooperative agreement, the terms and effect of which would expand his jurisdiction and duties and responsibilities, and limit his discretion, contrary to the statutes and law of this state.

You are, therefore, advised that the Credit Union Commissioner cannot enter into the proposed cooperative Truth in Lending Liaison Agreement with the Federal Trade Commission.

This office is cognizant of the fact that a need exists for cooperation between state and federal agencies for the adequate enforcement of the Truth in Lending Law and consequently limits the opinion herein expressed to the proposed Truth in Lending Liaison Agreement.

## SUMMARY

The Credit Union Commissioner cannot enter into a proposed Truth in Lending Liaison Agreement with the Federal Trade Commission because the effect of such agreement would expand the jurisdiction, duties, and responsibilities of the Credit Union Com-

missioner as well as limit his discretion, contrary to the statutes and law of this state.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Ray McGregor
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W.E. Allen, Acting Co-Chairman

Fielding Early
Arthur Sandlin
Jay Floyd
Camm Lary

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant